## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

**TROY JOHNSON**                                                                                    **PLAINTIFF**

**v.**                                        **CASE NO. 3:07-CV-00004**

**HANJIN SHIPPING COMPANY, LTD.**                                          **DEFENDANT**

## ORDER

Presently before the Court is Defendant's Motion to Dismiss, or alternatively for

Summary Judgment and Plaintiff's Motion for Leave to Amend Complaint and Deny

Defendant's Motion to Dismiss or for Summary Judgment.

**I.      Background**

Prior to filing this case, Plaintiff first asserted these claims against this Defendant by

filing a complaint on March 26, 2006 in the United States District Court for the Western District

of Tennessee, *Troy Johnson v. Hanjin Shipping Company, Ltd.*, Docket No. 2:06-cv-02408 (the

"Tennessee action").  On October 9, 2006,[1] Defendant filed a Motion to Dismiss for Failure to

State a Claim pursuant to Rule 12(b)(6) asserting that Plaintiff's claims were barred by the one-

year statute of limitations in Tennessee for actions for injuries to the person.  Tenn. Code Ann. §

28-3-104.  Plaintiff alleged in his complaint that he was injured on March 9, 2005, but did not

file his complaint in that case until June 30, 2006.  Plaintiff asserts that when he filed his

complaint in the United States District Court for the Western District of Tennessee, he expected

that the Arkansas statute of limitations would apply.   On October 19, 2006, Plaintiff filed his

---

[1]Defendant's statement that it filed said motion on March 9, 2006 is obviously in error.
The docket sheet in the case reflects October 9, 2006, as the date of filing.

Notice of Voluntary Dismissal in the Tennessee action, and the case was dismissed without prejudice.

Subsequently, on December 1, 2006, Plaintiff filed the Complaint at issue in the Circuit Court of Crittenden County, Arkansas.  The original Complaint alleges that Plaintiff is a resident of Memphis, Tennessee, and Defendant is a resident of Seoul, Korea with its North American Regional Headquarters based in New York, but bearing a mailing address in Paramus, New Jersey.  The original Complaint also alleges that Defendant is in the business of transporting commercial freight through international and interstate commerce as a common carrier.

Plaintiff further alleges that on or about March 9, 2005, he was injured while attempting to lower the chassis of a semi-tractor truck by cranking and rotating the dolly handle that lowers the legs of the chassis because the chassis was too high to load his trailer.  He states that the gears within the gear box were defective and caused him to be thrown violently forward onto the ground while using the dolly handle supported by the gears.  Plaintiff further alleges that Hanjin owned the gear box, dolly handle, chassis legs, and chassis platform, and that Hanjin failed to maintain such equipment in good order and in a safe condition.  Defendant removed the case on January 17, 2007 to this Court.  Defendant filed its Motion to Dismiss or for Summary Judgment on April 4, 2008.  On April 18, 2008, Plaintiff filed his Motion for Leave to Amend Complaint and Deny Defendant's Motion to Dismiss or for Summary Judgment.[2]

---

[2]It appears that Plaintiff inadvertently filed his proposed Amended Complaint as a separate document, rather than filing it as an exhibit to his Motion for Leave to Amend Complaint.  Therefore, the Court will consider document number 20 an exhibit to Plaintiff's Motion for Leave to Amend Complaint.

Defendant states that it maintains a network of offices across the United States, with its North American Regional Headquarters located in Paramus, New Jersey, but that it does not have any offices, employees, or agents in Arkansas.  Additionally, Defendant states that it has no real estate, personal property, inventory, or bank accounts in Arkansas, and that there are no debts owing to Defendant in any county in Arkansas.  Defendant submits the affidavit of Hae Woen Grace Bae, the Assistant Corporate Counsel for Hanjin Shipping Company, in support of these assertions.

## II.      Motion to Dismiss or for Summary Judgment

Defendants note that pursuant to Federal Rule of Civil Procedure 12(d), "[i]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Defendant asserts that Plaintiff's claims should be dismissed because this Court is not the proper venue for Plaintiff's claims and because this Court lacks *in personam* jurisdiction over Defendant.  Defendant notes that Plaintiff fails in his Complaint to specify the location where his alleged injuries occurred.

In response, Plaintiff states that Defendant is well aware that the incident giving rise to Plaintiff's claims took place in Marion, Arkansas.  Plaintiff attaches his affidavit in support of this fact.  Plaintiff further states that Defendant operates within the realm of interstate commerce and holds its containers/trailers out for pick-up, loading, and delivery in most, if not every state, within the continental United States.  Thus, Plaintiff claims that Defendant's assertions are disingenuous.

### A.  Venue

Defendant first argues that Plaintiff's claims should be dismissed for improper venue, as this action is the result of forum shopping.  Defendant asserts that "[i]n a removed case the federal court has only such jurisdiction as was possessed by the State court from which the action was removed, and if the State court lacked jurisdiction by reason of improper venue under State statutes, the federal court acquires none on the removal."  *Cobb v. Nat'l Lead Co.*, 215 F. Supp. 48, 51 (E.D. Ark. 1963).  Defendant further asserts that in Arkansas, "[a]n action . . . against a nonresident of this state, or a foreign corporation, may be brought in any county in which there may be property of or debts owing to the defendant."  Ark. Code Ann. § 16-60-108.  However, Defendant states that it does not have any offices, employees, agents, real estate, personal property, inventory, or bank accounts in Arkansas, and that there are no debts owing to Defendant in any county in Arkansas.  Thus, Defendant argues that Critttenden County was not the proper venue for Plaintiff's action, and likewise, this Court is not a proper venue for Plaintiff's action.

Plaintiff asserts that venue in this Court is proper pursuant to 28 U.S.C. § 1391(a)(2), which provides, "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .."  The Court also notes that the venue provision for personal injury actions in Arkansas provides in pertinent part:

> (a) All actions for damages for personal injury . . . by wrongful act shall be brought in the county where the accident occurred which caused the injury. . . .

(b) All civil actions for the recovery of damages brought against a nonresident of
the State of Arkansas may be commenced in the county where the accident
occurred which caused the injury . . . .
. . .

Ark. Code Ann. § 16-60-112.  Plaintiff asserts that the accident occurred in Marion, Crittenden

County, Arkansas.  Therefore, Crittenden County was the proper venue for Plaintiff to bring his

state court action, and this is also a proper venue.  Defendant's motion is denied as to its

improper venue objection.

      **B.**     **Personal Jurisdiction**

     Defendant also claims that Plaintiff fails to meet his burden to show that this Court has *in*

*personam* jurisdiction over Hanjin in this matter.  "To survive a motion to dismiss for lack of

personal jurisdiction, a plaintiff 'must state sufficient facts in the complaint to support a

reasonable inference that [the defendants] can be subjected to jurisdiction within the state.  Once

jurisdiction ha[s] been controverted or denied, [the plaintiff] ha[s] the burden of proving such

facts.'"  *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting *Block*

*Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974)).

     "A federal court in a diversity action may assume jurisdiction over a nonresident

defendant only to the extent permitted by the long-arm statute of the forum state and by the Due

Process Clause."  *Id.* at 1073 (quoting *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir.

1991)).  "Because the long-arm statute of Arkansas confers jurisdiction to the fullest

constitutional extent," the Court need only consider whether the exercise of personal jurisdiction

in this case comports with due process.  *Id.*

     "Due process requires 'minimum contacts' between [a] non-resident defendant
and the forum state such that 'maintenance of the suit does not offend traditional

5

notions of fair play and substantial justice.'" *Burlington Indus.*, 97 F.3d at 1102
(quoting *Wold-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92, 100 S.
Ct. 559, 62 L. Ed. 2d 490 (1980)).  The Supreme Court has set forth two theories
for evaluating minimum contacts, general jurisdiction and specific jurisdiction.
Under the theory of general jurisdiction, a court may hear a lawsuit against a
defendant who has "continuous and systematic" contacts with the forum state,
even if the injuries at issue in the lawsuit did not arise out of the defendant's
activities directed at the forum. *Helicopteros Nacionales de Colombia, S.A. v.
Hall,* 466 U.S. 408, 415-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In contrast,
specific jurisdiction is viable only if the injury giving rise to the lawsuit occurred
within or had some connection to the forum state. *Id.* at 414, 104 S.Ct. 1868 . . .

Both theories of personal jurisdiction require "some act by which the defendant
purposely avails itself of the privilege of conducting activities within the forum
State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,*
357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). If a court determines
that a defendant has minimum contacts with the forum state, it may then consider
"whether the assertion of personal jurisdiction would comport with 'fair play and
substantial justice.' " *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105
S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v.
Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Based on the foregoing, [the Eighth Circuit has] instructed courts to consider the
following factors when resolving a personal jurisdiction inquiry: "(1) the nature
and quality of [a defendant's] contacts with the forum state; (2) the quantity of
such contacts; (3) the relation of the cause of action to the contacts; (4) the interest
of the forum state in providing a forum for its residents; and (5)[the] convenience
of the parties." *Burlington Indus.,* 97 F.3d at 1102. Significant weight is given to
the first three factors. *See id.* ("[T]he first three factors [are] of primary
importance."). However, the fact that the cause of action is not linked to the
defendant's contacts with the forum state does not necessarily preclude a finding
of personal jurisdiction. *See Helicopteros,* 466 U.S. at 414-15, 104 S.Ct. 1868
(explaining general personal jurisdiction).

*Id.* at 1073-74.

Defendant states that Plaintiff only filed this action in Arkansas to circumvent the statute

of limitations as a bar to his claims in Tennessee and has failed to state any facts in his

Complaint to show that this Court has *in personam* jurisdiction over Hanjin.  Specifically,

Defendant states that Plaintiff fails to specify the location where his alleged injuries occurred and

fails to set forth any facts establishing any acts by which Hanjin purposely avails itself of the privilege of conducting activities within Arkansas.  Additionally, Plaintiff is a resident of Tennessee and Defendant is a resident of Korea.  Defendant reiterates that it does not have any offices, employees, agents, real estate, personal property, inventory, or bank accounts in Arkansas, and that there are no debts owing to Defendant in any county in Arkansas.

In response, Plaintiff argues that this Court has *in personam* jurisdiction over Hanjin under either the general or specific jurisdiction theory.  Under the general jurisdiction theory, Plaintiff argues that the very nature of Defendant's shipping logistics company requires that it engage in interstate commerce.  Plaintiff further states that Defendant's containers/trailers are shipped via United States railroad carriers to various points within the continental United States, and depending upon their final destination, are taken to various rail yards around the country.  Once there, Defendant's containers/trailers are picked up by semi-tractors and delivered via various states' highways to their final destination.

With regard to the specific jurisdiction theory, Plaintiff states that he was picking up Defendant's container/trailer from the Union Pacific rail yard in Marion, Arkansas when he sustained the injury.  Thus, the underlying claim arose out of Defendant's contacts within an Arkansas-based rail yard.  Furthermore, Plaintiff argues that the very nature of Defendant's business is such that Defendant necessarily avails itself of the privilege of conducting business in Arkansas because the Union Pacific rail yard in Marion, Arkansas is one of Defendant's pick-up points.  Finally, Plaintiff states that Defendant utilizes railroads and highways within the state of Arkansas to transport its container/trailers.

7

In *Anderson v. Dassault Aviation*, 361 F.3d 449, 453-54 (8th Cir. 2004), the Eighth

Circuit held that a French corporation had sufficient contacts with Arkansas to subject it to

personal jurisdiction when the majority of the jets sold by the French corporation flew in and out

of Arkansas to be completed to the specifications of consumers at the corporation's wholly-

owned subsidiary's production site in Little Rock, the French corporation "tout[ed] in its own

annual report that its 'presence' in the United states ha[d] been especially significant in the state

of Arkansas", and the French corporation indicated its pride in the Arkansas facility on the

website shared with the wholly-owned subsidiary.  The court emphasized that the nexus between

the corporation and Arkansas went "well beyond mere ownership" of the subsidiary, and was not

a situation in which the corporation "simply placed the jet at issue 'into the stream of commerce'

which fortuitously swept it into Arkansas." *Id*. at 454.  Rather, the corporation had "consistently

acted to consolidate the image and operations" of itself and the subsidiary.  *Id*.  The corporation

and subsidiary also issued several publications referencing their Arkansas activities, including a

joint publication listing seventeen jets owned and operated by Arkansans, contact information for

a "field service representative" in Little Rock, an "authorized service center" for the jets in Little

Rock, and a designated salesperson for potential Arkansas customers.  *Id*.  The court concluded

that the corporation "'purposefully directed its products to the United States,' and specifically to

Arkansas, where most Falcon jets are completed, 'through the distribution system it set up in this

country,'" and thus, "it would not violate traditional notions of fair play and substantial justice

for an Arkansas court to assert personal jurisdiction in this action." *Id*. at 454-55.  The court also

noted that although the injury did not occur in Arkansas and the plaintiff was not an Arkansas

resident, the corporation had ready access to air transportation for conveniently making the trip to

Little Rock, Arkansas, Arkansas had a substantial interest in the matter to be litigated, as the

safety of Falcon jets affected the state's consumers and workers who encountered the

corporation's products, and the plaintiff had no other forum available to her in this country.  *Id.*

Similarly, in *Clune v. Alimak AB*, 233 F.3d 538, 543 (8th Cir. 2000), the Eighth Circuit

held that the Defendant had sufficient minimum contacts with Missouri when rather than "simply

set[ting] a product adrift in the international stream of commerce," the defendant created the

distribution system that strategically brought the product at issue to the state and to much of the

country.  The court further stated:

> Recently we applied the rule of *Barone* in *Vandelune v. 4B Elevator Components
> Unlimited,* 148 F.3d 943 (8th Cir.1998), where a worker who was injured in a
> grain dust explosion in Iowa brought a products liability action against the British
> manufacturer of a safety device used in the grain elevator. Although the
> manufacturer in *Vandelune* had no office, agent, employee, property, or
> advertising or solicitation campaigns in Iowa, we found that the lack of a direct
> marketing presence did not necessarily mean that the manufacturer had not
> purposefully marketed its product in that state. *See id.* at 948. The following facts
> led to the conclusion that there were sufficient contacts to support jurisdiction in
> that case: (1) the appellee designed the product at issue for the United States
> market; (2) the appellee agreed to distribute its product through affiliates located
> in the United States; (3) the appellee put its logo and identifying decals on the
> product; (4) the appellee directly shipped some of its products to a distributor in
> nearby Illinois; (5) the appellee's employees attended technical support meetings
> at the distributor's Illinois facilities; and (6) the appellee sold 619 units to an
> Illinois distributor, 81 of which were resold in Iowa. *See id.*

> The facts alleged by the Clunes are similar to those in *Vandelune.* Linden-Alimak
> AB/Alimak AB designed its construction hoists for the United States market. The
> company had exclusive distribution agreements with United States distributors.[FN7]
> The Swedish parent's logo was displayed on products that were sold in the United
> States. Linden-Alimak AB/Alimak AB also conducted training seminars in the
> United States for technicians employed by Alimak, Inc. who serviced hoists that
> were sold by the subsidiary. Of the 700 construction hoists that were sold in the
> United States by the company's distributors, between twenty and forty ended up in
> Missouri. This fact alone makes it difficult for us to characterize the hoist's
> location in Missouri as random, attenuated or fortuitous. *See Burger King,* 471
> U.S. at 475, 105 S.Ct. 2174. Additionally, the Swedish parent provided sales

brochures and instruction manuals to its distributors for use in promoting and servicing its products in the United States. Members of the Swedish parent's board of directors also served as directors of its subsidiary. Any of these facts, taken alone, might fall short of purposeful availment, however, when taken together they show that Linden-Alimak AB/Alimak AB engaged in a series of activities that were designed to generate profits to the parent from its subsidiaries' sales across the United States.

. . .

The facts show that Linden-Alimak AB/Alimak AB purposefully directed its products to the United States through the distribution system it set up in this country. The company knew that by virtue of this system, its construction hoists entered the Missouri and other Midwest markets. Linden-Alimak AB/Alimak AB's creation of the system that brought hoists to Missouri established sufficient minimum contacts with that forum to satisfy the due process standards set by the Supreme Court and followed by this circuit.

*Id*. at 543-45.[3]

Here, the Court finds that Defendant has purposely availed itself of the privilege of conducting activities within Arkansas, thus invoking the benefits and protections of its laws.  The Court further finds that the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice."  The Court notes that Plaintiff asserts that the Union Pacific rail yard in Marion, Arkansas is one of Defendant's pick-up points, and is where the injury allegedly occurred.  Defendant availed itself of conducting business in the state by utilizing railroads and highways within the state of Arkansas to transport its container/trailers, and by utilizing an Arkansas rail station as a pick-up point.  Thus, Defendant directed its containers/trailers to Arkansas.  Additionally, the safety of Defendant's containers/trailers affects Arkansas workers who encounter said containers/trailers, and Defendant has pointed to no other forum available to Plaintiff.  Furthermore, Arkansas is a convenient location, as Plaintiff is a resident of Memphis,

_____

[3]The Eighth Circuit also distinguished post-*Asahi* Eighth Circuit decisions where the court denied jurisdiction over foreign defendants. *See id*. at 545 n.9.

Tennessee, which is on the Arkansas-Tennessee border, and the events that gave rise to the cause

of action occurred in Marion, Arkansas.  Defendant's motion is denied as to its personal

jurisdiction argument.

**III.**      **Motion for Leave to Amend Complaint and Deny Defendant's Motion to Dismiss or for Summary Judgment**

The Court finds that it is appropriate to grant Plaintiff leave to amend his Complaint.  *See*

*Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc*., 358 F.3d 1086, 1089 (8th

Cir. 2004) ("Rule 15 of the Federal Rules of Civil Procedure allows for the liberal amendment of

complaints 'when justice so requires.'").  Plaintiff is directed to file his Amended Complaint

forthwith.  Additionally, for the reasons stated above, Plaintiff's request to deny Defendant's

Motion to Dismiss or for Summary Judgment is also granted.

**IV.**      **Documents Not to be Filed**

The Court notes that the Deposition Notices (Docket Numbers 15 and 23) filed by

Defendant are listed as documents not to be filed pursuant to the Federal Rules of Civil

Procedure and the Guidelines for Filing Discovery Documents in All Pending Civil Cases.[4]

Therefore, the Court strikes Docket Numbers 15 and 23.

Accordingly,

IT IS THEREFORE ORDERED THAT the Defendant's Motion to Dismiss, and

Alternatively for Summary Judgment (Docket No. 19) shall be, and it is hereby DENIED.

---

[4]The Guidelines for Filing Discovery Documents in All Pending Civil Cases can be found on this Court's internet site by clicking on "Information" and looking under "Court Information".

11

IT IS FURTHER ORDERED THAT Plaintiff's Motion for Leave to Amend Complaint and Deny Defendant's Motion to Dismiss or for Summary Judgment (Docket No. 21) shall be, and it is hereby, GRANTED.  Plaintiff shall file his Amended Complaint forthwith.

IT IS FURTHER ORDERED THAT the Court hereby STRIKES Docket Numbers 15 and 23.

Dated this 6th day of May, 2008.

/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE